The first case today is number 172136, United States v. Danny Veloz. Good morning, Your Honor. Please support. Let us get organized one second. Sure, sorry. No problem. Okay, go ahead. I was going to ask if I could reserve two minutes. Sure. Thank you. Well, Your Honor, John Orlando, the affiant in this matter, made affirmatively false statements in the search warrant affidavit. And the most clear that I'll start with in terms of affirmatively false was that he said that the CIA picked Veloz's picture out of the photo book. That just did not happen. Well, excuse me. As I understand it, that alleged misstatement was not pointed out to the magistrate judge, to the district court, on the motion to suppress. On motion to suppress itself, that was a point that was raised only after suppression had been denied. Is that correct? Well, Judge, it wasn't. Is that correct? It's correct, but I would like to point out that I didn't, it wasn't, the government was still misrepresenting in its memorandum in opposition, for one. Two, I was dealing. Excuse me, counsel. So what is our standard of review when the point was not raised on the motion to suppress? Classically abusive discretion. Even though there was no timely raising of the alleged misstatement? Well, it's timely raised, Judge, because I couldn't know. Meaning the government filed it under seal, for one, the photo book itself. They only made the change in the suppression of ID memo. They didn't make it in any of their memos on the suppression issue. And then they weren't able to tell me when they were moving Beloz's picture in and out of the photo book. So they were taking some photos out. You can see it in the footnotes. It was a different individual. Like his photo went from one spot to another spot. I had no idea that Beloz's photo wasn't in the photo book. Why should I initially presume that the agent is saying something that is not true, when I don't have the thing that will show me that it's not true? I'm relying on the government's discovery. I met my obligations asking for how the ID process had taken place. They never told me that this ID didn't take place. What they switched up to was that, and this was, again, in the suppression of ID memo, they switched up to that Beloz was ID'd by a single RMV photo at the Manchester Police Department. Well, that wasn't even true. The basic point you're trying to make is as soon as you could possibly have known it was false, you objected. Exactly. Okay, if that's true, the remedy would be to excise the false statement. And then you have to show that if we excise it, there's no probable cause, right? Yes. Well, there's two things, I guess, I would say. First, I point to McMurtry because the court was allowed to effectively, like in McMurtry, the court frowned on the fact that the court held a pre-francs. That's what they called it in McMurtry. And here, I didn't even get a pre-francs. Obviously, I didn't get a francs either. But, I mean, the government was allowed to amend how this happened without there ever being an evidentiary hearing to explore how it happened. But that would just tell you more about whether the statement was false. It would also tell you— How would it affect the issue of the improbable cause? Because it would also tell you about the truthfulness of the affiant, which is part of why we point to Clark, but I think is reasonable under Tangway, too. Because, remember, what they posit as happening, which is that there was an ID of an RMV photo on the 24th at the Manchester Police Department, didn't happen. So then I'm trying to get at what happened, which means, did John Orlando lie to the prosecutor and the prosecutor adopted that lie? I could never get that from the court. What I got was threatened with the BBO, but it would have called into question— I would have been in a, I think, positive position of pitting the affiant against the prosecutor. And for the prosecutor to say he was credible, he was going to have to say that Orlando had told him something that wasn't true. And Orlando's the affiant and the search warrant. And at trial, Orlando says— I'm not—so— Sure. Under Franks, traditionally, if there's a false statement, you excise it, and then you look at what's left and you decide, is what's left enough for probable cause? If it is, that's the end of it. I would agree, except in this case— So what's the authority for suggesting that what we should do is excise it, decide that there still would be probable cause, but decide that the grounds for excising it might have opened the door to you to make a broader-ranged attack on the credibility of the affiant as to statements that you haven't shown are false? No, no, they are false. Meaning, Peter Levitt said that Orlando told him. Orlando said that Maldonado was identified as a singer. That's the false statement. Now we excise that. What you're saying is that even though if we excise it, what remains still provides probable cause, we should nonetheless say there's a Franks problem because once we excise it on grounds that it's false, that would open the door to you potentially showing other statements that you haven't shown are false might be false. What I'm saying is I did show they were false, but I think it's clear in the papers. I'd also move on to just say the other thing is there are clear material omissions. Clear material omissions that, for instance, Orlando is present when Amparo, victim number one, the person who gets tortured and is in the hospital, Amparo is shown a photo array with Maldonado in it, Maldonado being the CI. Amparo identifies Maldonado as having participated in getting him, in the seizure of him in Lawrence, but also importantly, and this is in Supplemental Appendix 155, says that Maldonado was holding a mini Uzi and he's characterized as being pretty sure of this identification. We know that Orlando knows this because the police report shows Orlando is present at that identification. Also, Andy's present when he's told that Maldonado had a mini Uzi by Amparo. We also know that because in the criminal complaint, in the footnote, Orlando says that Maldonado was identified by Amparo as being at the scene. Importantly, in the footnote on the criminal complaint, Orlando chooses to leave out the gun. And so it's knowing. He's knowing and he leaves it totally out of the affidavit that Maldonado is lying to him about his participation. This whole fiction that Maldonado post Miranda started telling the truth is not true and this is a clear example of it. Maldonado is saying at first, I just gave them the house. This is all post Miranda. I just had them use the house. Well, further into the interview, okay, I drove. Okay, I drove. I just stood by the van. Right? No. And then, remember, this is again what the government is playing and not Mr. Quinlivan, but the government is playing a little fast and loose. In their fact sections on the suppression issues, they're saying Amparo identified that four individuals had guns and Maldonado is saying, I saw one gun. Oh, they had guns? They had guns in my house? Surprise? Question mark? Okay. And then on police, similarly, Amparo says they were all wearing police, not uniforms, but kind of T-shirts that made it look like undercover police. Amparo says that clearly. Maldonado says, I didn't see any police shirts. Okay? And part of why that is important is that's Maldonado lying about his role. Right? And what he's critical on on Veloz is stating the role that Veloz played. And that is known to Orlando. He knows that and he leaves it out. He also knows that Maldonado has lied about whether Guzman was in the gang or not, was in the conspiracy or not. And Guzman's the one person who's known to him. And he can link Guzman to Maldonado, but he can't link Guzman to Veloz. From the May 8th detention of Guzman that Orlando was present for. The criminal record was not shared. Larceny, stolen property. Right? These are all lies by Maldonado known to the Affian. How is not sharing the criminal record a lie by Maldonado? No, it's a lie by the Affian. How is it a lie by Orlando? My language was not as good as it could have been there. Correct. What it is is a material omission by Orlando. He's at the Manchester Police Department. He can run a record. It shows larceny. It shows things that actually impugn the, it's not your classic criminal record. It's one that gets into his credibility. And Orlando leaves it completely out. And so, importantly, the magistrate is left with nothing but to believe that this person is telling the truth. We don't hear a single bad thing about this person. On top of the fact that Judge Stern calls him a co-conspirator, and so his ruling is based on facts not before the magistrate, then another thing is, and it's a... That suggests he wasn't under the misimpression that he wasn't a problematic character. I'm just saying that Judge Stern's rules on facts not before the magistrate. That's clear. Other things. Oh, Maldonado showed that he knew the interior of Veloz's home. No, he describes there being four TVs. He describes there being an apartment that's just used for tracking people. And then he changes it to, it's Veloz's family residence. That's all there. But to the magistrate, it's portrayed as a seamless, one TV, accurate, nothing wrong. So you can believe he knows the interior. Last thing on the interior, if I can just make this point. Carlos Bencosime was in the photo book. Photo number 27. He's in the affidavit. Not explicitly, but Orlando says that there are guns in Veloz's house because someone had two weeks before. Well, when you look at the transcript, the only time that Maldonado mentions guns in that long interview is that Bencosime had a shotgun stuck into his mouth by Veloz at Veloz's residence. And the point is that Maldonado is shown in the photo book with Bencosime. He doesn't pick him up. You have three minutes reserved, so you can do it on the back side. Let me just finish this thought. I'll give you ten seconds. If you're finishing your thought, go ahead. Ten seconds. Which is that Maldonado took what Guzman told him that he later says, I don't know Bencosime. Bencosime is not known to me. Never saw that. That's what Guzman told me. That's why tangling is important here. Because he's conflating. I'll do it on the back. Thank you. Okay. Judge Barron, may it please the Court. Mark Quinlivan on behalf of the United States. If I could just begin about addressing the probable cause showing in the affidavit, because I think that will go a long way to explaining why the one admitted error and the alleged material admissions in this case would have not vitiated probable cause in this case. We start with the fact that this was a first-hand account provided by the informant of criminal activity, which this Court has recognized is the hallmark of a credible tip. And it wasn't just of suspected criminal activity. This was of a crime that had already taken place. The affidavit was submitted on July 25th. The kidnapping of the two individuals had occurred two days earlier. So I think that that only underscores the reliance that the magistrate judge could have put on the informant's, the information provided by the informant. That then is only underscored by the fact that the information provided by the informant was only the kind of information that would be known to an insider or a co-conspirator of the kidnapping operation. And again, this Court has said on several occasions that persons engaged in criminal activity do not typically invite outsiders to their view. So an experienced magistrate judge would have understood that at a minimum, the informant was involved in the kidnapping operation. Even more critically, a key piece of information that was provided by the informant, that what the kidnapping crew would do is target individuals, place a GPS device on the undercarriage of their vehicles, and then track their movements. That was corroborated by the fact that a GPS device was found on the undercarriage of one of the victim's vehicles in his driveway where he was kidnapped. And in addition, there was other corroborated information, or there was other information that the agents were able to corroborate, including that the defendant and his girlfriend lived at the address in question, that vehicles were registered to his girlfriend, and that the red van that was seen outside the residence was registered to Maldonado at his place in Manchester, New Hampshire, which is where the victims escaped after having been kidnapped. So taking that in its totality, an experienced magistrate judge would readily have found that probable cause was established. Mr. Quinlivan, here's what the problem is. Mr. Shea is arguing, as I understand it, that even though you have the showing that you've just outlined, that the magistrate, if properly informed, would understand that there was the deliberate falsehood about the photo identification and the material omission of facts that would have weakened the showing of probable cause, and that the combination of those two things were a fair indication that the affiant was trying to stack the deck and should have warranted a Franks hearing. Well, that's a rough summary. As I understand this argument, that's the argument you've got to confront. I understand, and I understand that argument, Judge Celia, and I don't think that's consistent with this court's case law. I think at least what I understand, this and other courts have repeatedly said, is what you do is you reform the affidavit by either excising an incorrect statement or adding information that should have been included into the affidavit. Unless you've got reason to believe that the affiant is deliberately lying. That's right, Judge. And so that's what is concerning me. I'm not saying that the defendant, he had met the threshold for a Franks hearing on that basis, but I'd like you to confront that argument. I don't think there's anything in the record that suggests that the affiant was lying. I think this was a search warrant that was sought within two days after the kidnapping in question, in basically very rushed circumstances. Because the three individuals had been arrested, there was the obvious fear that any evidence at the defendant's residence might be destroyed or removed. And the government did explain in a subsequent pleading, as my friend has acknowledged, that Naldonado was shown an RMV picture of the defendant when they drove to check out whether that in fact was his residence. So no, the district court didn't hold a hearing on this. But I think the record shows that this was a search warrant that was sought in very fast circumstances. That's not an excuse, but it's an explanation. And there is an explanation for why there was the possible confusion about when Naldonado was shown the picture of the defendant. I just want to understand how you think we're supposed to do the Franks analysis and whether that, in response to the last question from Judge Selya, he said that he asked you whether, instead of merely reforming the affidavit to account for the material omissions and the inclusion of the false statement, we're supposed to also assess whether those falsehoods and omissions provide a basis for concluding that there was deliberate lying by the affidavit and that the Franks hearing could be on that question. If I suggested that, I didn't mean to, Judge Barron. What I was trying to say was, in my view of it, Is your view that that is not permissible for us to do under Franks? My understanding under Franks is that you reform the affidavit to see whether probable cause is established. I then just wanted to go on to say that, in our view, there's nothing in the record that shows or on which there was a basis for the district court to believe that the special agent in this case was providing deliberately false information. So, no, I was not meaning to suggest that there's this additional layer under the Franks analysis. I do want to point, I'm sorry, Judge Selya. But in a case where there was a basis to inquire into deliberate falsity, there was a threshold showing that there might be some deliberate falsity, then would you say you're showing a probable cause, even though some of it might turn out to be false, that the magistrate, the district judge, shouldn't have inquired further? Judge Selya, I think that, to some degree, that sort of collapses the falsehood into the showing of, not collapses, I shouldn't say, but if, in fact, there's a deliberate falsehood that goes so, obviously, so directly to the probable cause analysis that the remainder, the district court has concerns about whether the remainder of that showing has been satisfied. Absolutely. I would say it has to be, to some degree, a sliding scale. Well, I think, if I understand the question in just the way, I think this is how the case is being argued by your opponents, so it's worth engaging on it. There's a question about the credibility of the CI. Yes. And the false statements bear on the credibility of the CI, and then you're saying, yeah, but if you stuck the statement back in that might be accurate so that the magistrate would have a fuller picture of the CI, given the detailed information by the CI and the corroboration of what was said, that would invitiate probable cause. But there's a separate question about the credibility of the affiant, who is attesting to what the CI said, and the deliberate falsehood by the affiant as to one issue, I haven't thought under Frank's, opens the door to them suggesting there's a Frank's hearing on the credibility of the affiant as to everything that the affiant's saying. Do you follow? I follow, and I just point out, Judge Barron, that the only point that that goes to is the statement about picking, that Maldonado picked, or that the informant picked the defendant out from the photo book. But you've got two different questions. Question one is theoretical, all right? Is that the right question to ask? Can a showing of deliberate falsity trigger such an inquiry? Then you've got the further question of does that apply in this case? I understand you think it doesn't apply because there's no sufficient threshold showing of deliberate falsity. But what about as a theoretical matter? What if there is some reason to believe that there is deliberate falsification on the part of the affiant? Well, I guess my answer would be that that would, in our view, that would only come after a district court has conducted a Frank's hearing, heard from the affiant, heard the explanation for why, whether it be false or a mistaken statement was made. But since he's requesting a Frank's hearing, what's the trigger to get to the Frank's hearing? I understand, and I go back to the fact that there's nothing in the record that suggests that this was a deliberate. You want to talk about this case. We're first trying to get a theoretical structure. Take a case where the showing of probable cause on its face is perfect, all right? But there is some good reason for the magistrate judge to believe that even though it's perfect, the affiant may be making it up. It's too perfect. It's too perfect, all right? Can't the district judge order a Frank's hearing on the basis of a threshold showing of good reason to believe that the affiant is making it up? In that circumstance, I would say yes. I would say yes. If the district court believes that the affiant was making something or the entirety or something up, absolutely. A district court could order a Frank's hearing on that basis. The key points here are with respect to the material admissions, what the district court said is that an experienced magistrate judge would not be surprised to learn that somebody would initially deny their involvement in criminal activity before providing relevant information. That's also reflected in other cases. We cite in our brief that magistrate judges are aware that persons who cooperate with law enforcement oftentimes have a reason for doing so and may have criminal records. Again, this was a case in which the district court had a circuit of pleadings on various motions to suppress where these issues were fully explored. Again, as my friend acknowledges, prior to the district court ruling on the motion to suppress and for a Frank's hearing, the government had informed the court that the loss had not been identified from the photo book and explained that it appeared that in fact what happened was he was shown the RMV picture. The district court had that information in front of him when he denied the motion to suppress and for a Frank's hearing. While I concede that if the court had come to the conclusion that that misstatement was either deliberately false or sufficient to call into question the probable cause showing, absolutely the district court could have ordered a Frank's hearing. But the district court had that information in front of him at the time he made his ruling and found that a Frank's hearing was not warranted and that probable cause supported the search warrant. I'd be happy to address any of the other issues, otherwise we'll rest on our briefs. Thank you. Sorry for running over there before. I would just point out that their amended filing on the issue of the photo book was also inaccurate and it was also an untruth based on something they claimed was told them by the affiant. Now to go back to the point I was trying to make on the Bencosme number 27 in the photo book. So Maldonado doesn't pick out Bencosme out of the photo book. He was number 27. He's the guy who supposedly stuck the gun in the mouth. His later explanation, this is critical to everything about the credibility. He said he presented it as his own observation. He presented it as his own observation. It was not. He later said Guzman told me. And so all of these things, that should lead to further investigation under Tanguay. Meaning the affiant is being told things that aren't true as if they were his own observations. And the government is relying on these observations as the reason to say there's enough probable cause. But Maldonado is adopting the observations of others and presenting them as his own. And that would have been ferreted out. And similar that I mentioned before, he's changing his observations and that is never dealt with by the affiant. He presents a very clean picture of perfection to the magistrate when the person is changing their story. Changing their descriptions of the interior of Veloz's apartment. Also the GPS. I mean the GPS is not a big deal. All the conspirators from 2010 were using it. It's on Maldonado's computer from 2010. Last thought. The CW2, meaning Maldonado, identifies himself. There are no cases that say that that is okay. And when you combine that with all of the material omissions and the false testimony and Maldonado, the magistrate being presented with Maldonado identifying himself, if one looks at... Thank you. I'd just say false dream. Thank you. Thank you.